UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DANIEL AUSTIN,<br><br>     Plaintiff,<br><br>  v.<br><br>BAJRAMI GROUP, INC., a Delaware corporation,<br><br>     Defendant. | Case Number 5:25-cv-1929 |

## COMPLAINT

Plaintiff Daniel Austin files this Complaint against Defendant Bajrami Group, Inc. and states as follows.

## PRELIMINARY STATEMENT

1. This action arises from Defendant's solicitation of $450,000 from Plaintiff for a specific investment, Defendant's receipt of those funds, and Defendant's subsequent failure to invest the money as represented or return it upon demand.

2. Between mid-2024 and mid-2025, Defendant, acting through its principal Bruno Bajrami, repeatedly changed its explanation for where Plaintiff's money was and what had been done with it. Defendant's explanations shifted from a Tirana real estate project, to an oil or diesel transaction, to a tobacco venture purportedly connected to Philip Morris, and finally to a claim that Plaintiff's funds had been converted to cash and handed to a third party in Albania.

3. Throughout this period, Defendant acknowledged that Plaintiff was owed the full $450,000, asserted that Plaintiff's funds could not be returned because Defendant was not liquid, and returned only a nominal portion of the principal after more than a year.

4.      Plaintiff brings this action to recover his funds, together with damages caused by Defendant's conduct.

## PARTIES

5.      Plaintiff is an individual and citizen of the State of Texas, residing in San Antonio, Bexar County, Texas.

6.      Defendant is a Delaware corporation with a principal place of business in New York.

## JURISDICTION AND VENUE

7.      This  Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states, Plaintiff is a Texas citizen and Defendant is a Delaware and New York citizen, and the amount in controversy exceeds $75,000.

8.      This Court has personal jurisdiction over Defendant because Defendant purposefully directed activities toward Texas. Defendant initiated contact with Plaintiff in Texas, communicated extensively with Plaintiff in Texas by phone, text message, email, and video conference, transmitted the investment agreement to Plaintiff in Texas, and accepted $450,000 wired from accounts controlled by Plaintiff while he resided in Texas.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to the claims occurred in this District, including receipt of Defendant's solicitations, execution of the investment agreement, initiation of the wire transfers, and Plaintiff's receipt of Defendant's post-investment representations.

2

## FACTUAL ALLEGATIONS

*The Coaching Relationship*

10.    In early 2024, Plaintiff enrolled in an online sales coaching program marketed by Defendant's principal, Bruno Bajrami, under the "Top Closers" brand. Plaintiff paid approximately $15,000 for group and individual coaching services.

11.    During the coaching relationship, Bajrami presented himself as a highly successful entrepreneur, repeatedly describing himself as a "millionaire by 23," highlighting his sales success, and portraying access to exclusive opportunities and high net worth connections.

12.    Over time, Bajrami asked Plaintiff about Plaintiff's financial resources and liquidity. These inquiries occurred after the coaching relationship was established and trust had developed.

13.    During this same period, Plaintiff was undergoing serious medical treatment. Bajrami was aware of Plaintiff's medical treatment and vulnerability at the time Defendant made his investment pitch.

*The Real Estate Investment Pitch*

14.    In mid-2024, Bajrami proposed that Plaintiff participate in an investment described as a real estate development project in Tirana, Albania.

15.    Bajrami represented that Plaintiff's funds would be used to acquire or develop real estate in Tirana, that the investment was secure, and that Plaintiff would receive a return of approximately 2.5x his principal within a short period of time.

16.    Bajrami further represented that Plaintiff would receive a 1% equity interest in the venture and that Bajrami and his family had committed substantial personal capital to the same project, including approximately $750,000 of Bajrami's own funds and additional family funds.

*The Investment Agreement*

17.    On or about May 23, 2024, Defendant transmitted to Plaintiff a written "Investment Agreement," which Plaintiff executed.

18.    The agreement identified Bruno Bajrami as Chief Executive Officer and Founder of Bajrami Group, Inc., a Delaware corporation, and identified Plaintiff as an individual residing in San Antonio, Texas.

19.    The agreement provided that Plaintiff agreed to invest $450,000 in a real estate project located in Tirana, Albania and Defendant agreed to use the funds exclusively for that purpose.

20.    The agreement further set forth that any deviation from the stated use of funds required Plaintiff's prior written consent.

21.    The agreement did not identify any specific property, parcel, address, development plan, timeline, or counterparty. No title documents, contracts, or closing materials were attached or referenced.

*Plaintiff's Wire Transfers*

22.    In reliance on Defendant's representations and the written agreement, Plaintiff caused $450,000 to be wired from his Charles Schwab brokerage account to Defendant's account at Community Federal Savings Bank in New York in three tranches:

- June 28, 2024: $50,000
- July 1, 2024: $100,000
- July 9, 2024: $300,000

23.    Defendant acknowledged receipt of these funds.

4

*Absence of Real Estate Activity*

24.    After receiving Plaintiff's funds, Defendant did not identify any specific real estate property in Tirana.

25.    Defendant did not provide deeds, contracts, architectural plans, development budgets, closing documents, organizational documents, or any other materials typically associated with a real estate investment.

26.    No real estate transaction or development ever occurred for Plaintiff's benefit.

*The First Pivot: Oil or Diesel Transaction*

27.    After Plaintiff requested updates, Bajrami represented that, instead of a real estate investment, Plaintiff's funds had been applied to an oil or diesel transaction, described as involving Kazakhstan or related markets.

28.    Bajrami described this oil transaction as a stronger opportunity than the original real estate project and stated that he had added approximately $750,000 of his own money.

> I allocated them into what I believed was a stronger opportunity, and I added a huge portion of my own capital (750) into it too because I truly believed it would benefit both of us.
>
> 7:30 AM

29.    Plaintiff did not provide prior written consent to any reallocation of funds away from real estate.

30.    Defendant produced no contracts, purchase orders, shipping documents, bills of lading, or other evidence showing that any oil or diesel transaction occurred.

*The Second Pivot: Philip Morris Tobacco Venture*

31.     When the oil explanation failed to result in repayment, Bajrami asserted that Plaintiff's funds were involved in a tobacco venture purportedly connected to Philip Morris.

32.     Bajrami represented that Philip Morris was relocating or expanding operations and that Defendant or his associates had secured exclusive distribution rights in Eastern Europe, including Albania.

33.     Bajrami required Plaintiff to sign a nondisclosure agreement in connection with purported Philip Morris materials and repeatedly stated that documentation could not be shared because of sensitivity and confidentiality.

34.     Defendant never produced any documentation establishing a contractual relationship with Philip Morris or any affiliated entity.

35.     Plaintiff's subsequent investigation revealed no evidence that Defendant had any legitimate role in a Philip Morris venture of the type described.

*The Albania Trip*

36.     In 2024, Bajrami invited Plaintiff to travel to Albania to see aspects of the purported investment.

37.     Plaintiff traveled to Tirana at his own expense and met with Bajrami.

38.     During the visit, Bajrami showed Plaintiff various locations, including a warehouse and a hotel, and represented that they were connected to the investment.

39.     Plaintiff observed no active development, construction, or operations consistent with Defendant's representations.

*Continued Non Payment and Assertions of Illiquidity*

40.    In 2024, after Defendant did not proceed with the promised real estate investment and instead represented that Plaintiff's funds had been diverted to an oil transaction and later to a purported Philip Morris venture, Plaintiff requested the return of his $450,000.

41.    Bajrami acknowledged that Plaintiff was owed the money but stated that Defendant could not return Plaintiff's money due to a lack of liquidity.

42.    Bajrami repeatedly promised that he would return Plaintiff's $450,000.

43.    Bajrami stated on multiple occasions that repayment was imminent, stating that funds would be returned by specific dates or after particular events.

44.    Each deadline passed without payment.

45.    Bajrami stated that he had over $4 million invested elsewhere and therefore could not immediately repay Plaintiff.

> I would've sent it back already without thinking twice but I'm not liquid right now because I got over $4M in investments    1:33 PM
>
> But I'll take care of it.    1:33 PM
>
> Never lose faith in me.    1:34 PM

> I haven't been paid out yet, but I'm actively waiting on that deal to close. I give you my word: the moment I get the returns, you will be paid back. I'm not hiding. I'm not running. I'm handling this.
>
> 7:24 AM

*The "Duka" Explanation*

46.    In mid-2025, Bajrami asserted a new explanation for the location of Plaintiff's funds, which he referred to as involving an individual known as "Duka."

47.    Bajrami stated that after receiving Plaintiff's wired funds in 2024, he transferred the money into an Albanian company account he controlled under the name Titanic, which he described as a temporary pass through account.

7

48. Bajrami stated that he did not know the name of the Albanian bank holding the Titanic account.

49. Bajrami stated that he converted Plaintiff's $450,000 into cash denominated in euros and combined it with approximately €750,000 of his own money.

50. Bajrami stated that approximately €1.2 million in cash was delivered to Duka in three separate in-person hand offs in Albania, occurring close in time to one another.

51. Bajrami stated that the initial purpose of giving the cash to Duka was to fund the previously described oil or diesel transaction.

52. Bajrami stated that when the oil transaction did not proceed, Duka proposed repurposing the same funds for a Philip Morris related tobacco venture.

53. Bajrami stated that under this revised plan, Duka was to deliver the cash to a person identified only as "Mr. Goldman" in Bremen, Germany.

54. Bajrami stated that he expected to receive a lucrative business interest connected to Philip Morris operations or distribution in Albania as a result.

55. Bajrami stated that he never received any such interest, shares, or consideration.

56. Bajrami stated that he does not know where the money is currently held and does not know how it is being safeguarded.

57. Bajrami could not identify the date of any cash withdrawal, the date of any hand off, the bank holding the Titanic account, the denominations of the cash, the location where the cash was stored prior to delivery, or the physical locations where the hand offs occurred.

58. Bajrami stated that he has been attempting to recover the money from Duka and that Duka has not returned it.

*Token Payments and Continued Promises*

59.    In December 2024, Defendant sent Plaintiff approximately $1,000.

60.    In July 2025, Defendant sent Plaintiff another nominal payment of approximately $1,000.

61.    Defendant repeatedly stated that these payments were made in good faith and that full repayment would follow once Defendant became liquid.

62.    Defendant also suggested that Plaintiff could provide an additional $170,000 as a loan to accelerate the process of returning Plaintiff's $450,000. Plaintiff declined.



63.    Plaintiff's consent to Defendant's possession of the funds was expressly limited to use for the agreed purpose, and any consent was rendered ineffective by Defendant's deception.

64.    All conditions precedent to Plaintiff's claims have been performed, have occurred, or have been waived.

*Damages*

65.    Plaintiff has recovered only approximately $2,000 of the $450,000 principal.

66.    Plaintiff has been deprived of the use of his funds for over a year.

67.    Plaintiff incurred additional expenses, including international travel, in attempting to verify and recover his funds.

## CAUSES OF ACTION

### COUNT I – FRAUD AND FRAUDULENT INDUCEMENT

68.    Plaintiff realleges and incorporates by reference paragraphs 1-67 as though fully set forth herein.

69.    Defendant, acting through its agent Bruno Bajrami, made material misrepresentations to Plaintiff for the purpose of inducing Plaintiff to transfer $450,000 to Defendant.

70.    Defendant's misrepresentations were made prior to and contemporaneously with execution of the Agreement and induced Plaintiff to enter into the Agreement and transfer funds.

71.    These misrepresentations included statements that Defendant had a legitimate investment opportunity, that Plaintiff's funds would be used for a specific purpose, that Defendant would not divert the funds without Plaintiff's consent, and that Plaintiff would receive a defined return on his investment.

72.    These representations were false when made or were made recklessly without regard to their truth. Defendant had no intention of using Plaintiff's funds for the stated purpose and no intention of safeguarding Plaintiff's money for Plaintiff's benefit.

73.    Defendant made these representations with the intent that Plaintiff rely upon them and transfer funds to Defendant.

74.    Plaintiff reasonably relied on Defendant's representations by wiring $450,000 to Defendant and by refraining from immediately pursuing recovery based on Defendant's repeated assurances.

75.     As a direct and proximate result of Defendant's fraud and fraudulent inducement, Plaintiff suffered damages in the amount of $448,000 representing the unpaid balance of the funds transferred, together with consequential damages.

## COUNT II – TEXAS THEFT LIABILITY ACT

(Tex. Civ. Prac. & Rem. Code § 134.001 et seq.)

76.     Plaintiff realleges and incorporates by reference paragraphs 1-67 as though fully set forth herein.

77.     Plaintiff had a possessory interest in the $450,000 transferred to Defendant.

78.     Defendant unlawfully appropriated Plaintiff's property with the intent to deprive Plaintiff of it.

79.     Defendant induced Plaintiff's consent to transfer the funds by deception, including false representations concerning the nature, purpose, and use of the funds.

80.     Defendant's conduct constitutes theft under Texas Penal Code §§ 31.03 and 31.09.

81.     As a result of Defendant's theft, Plaintiff suffered actual damages of $448,000.

82.     Pursuant to Tex. Civ. Prac. & Rem. Code § 134.003 and § 134.005, Plaintiff is entitled to recover actual damages, statutory damages, court costs, and reasonable attorneys' fees.

## COUNT III – BREACH OF CONTRACT

83.     Plaintiff realleges and incorporates by reference paragraphs 1-67 as though fully set forth herein.

84.     Plaintiff and Defendant entered into a valid and enforceable agreement governing the transfer and use of Plaintiff's funds.

85.     Plaintiff fully performed his obligations by transferring $450,000 to Defendant.

11

86.    Defendant breached the agreement by failing to use the funds for the agreed purpose, by diverting the funds without Plaintiff's consent, and by failing to return Plaintiff's money.

87.    Defendant received notice of the breach and failed to cure.

88.    As a direct and proximate result of Defendant's breach, Plaintiff suffered damages in the amount of $448,000 together with consequential damages.

## COUNT IV – UNJUST ENRICHMENT / MONEY HAD AND RECEIVED

### (Pled in the Alternative)

89.    Plaintiff realleges and incorporates by reference paragraphs 1-67 as though fully set forth herein, except the paragraphs reflecting the existence of a contract.

90.    Plaintiff transferred $450,000 to Defendant.

91.    Defendant accepted and retained these funds under circumstances that make retention inequitable.

92.    Defendant has not returned the funds to Plaintiff.

93.    Equity requires restitution of the unpaid balance of $448,000 to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendant Bajrami Group, Inc. as follows:

I.    Actual damages in the amount of $448,000;

II.    Statutory damages under the Texas Theft Liability Act;

III.    Reasonable attorneys' fees and court costs;

IV.    Pre judgment and post judgment interest as allowed by law;

V.    Equitable relief including restitution and constructive trust to the extent applicable; and,

VI.    Such other and further relief as the Court deems just and proper.

Respectfully submitted,

CHASE LAW & ASSOCIATES, P.A.

By:   */s/ Kenneth E. Chase*
     Kenneth E. Chase
     Chase Law & Associates, P.A.
     951 Yamato Road, Suite 280
     Boca Raton, FL 33431
     Tel: (305) 402-9800
     Fax: (305) 402-2725
     Email: kchase@chaselaw.com

     *Counsel for Plaintiff Daniel Austin*

13

# EXHIBIT A

## INVESTMENT AGREEMENT

This Investment Agreement (the "Agreement") is entered into as of 23/05/2024, by and between:

**1. Bruno Bajrami**
CEO and Founder of Bajrami Group Inc, a company incorporated under the laws of Delaware, with its principal office located at 651 N Broad St  (hereinafter referred to as "Bajrami").

**2. Daniel Austin**
An individual residing at ███████████ San Antonion, TX (hereinafter referred to as "Austin").

**WHEREAS**

1.  Austin has agreed to invest $450,000 (four hundred fifty thousand dollars) in a real estate project located in Tirana, Albania (the "Investment").
2.  Bajrami Group Inc has agreed to utilize this Investment for the acquisition, development, and/or management of real estate assets in Tirana, Albania (the "Project").
3.  The parties wish to define their respective rights and obligations concerning the Investment.

**NOW, THEREFORE,** in consideration of the mutual covenants and promises set forth herein, the parties agree as follows:

**1. Investment Contribution**
1.1 Austin agrees to invest $450,000 in the Project.
1.2 The funds shall be transferred to Bajrami Group Inc's designated bank account within [NUMBER] days of signing this Agreement.
1.3 Bajrami acknowledges receipt of these funds and agrees to provide a confirmation of the transfer.

**2. Use of Investment**
2.1 Bajrami shall allocate the Investment exclusively to the Project and provide regular updates to Austin regarding its utilization.
2.2 Any deviation from the agreed purpose of the Investment requires Austin's prior written consent.

|  |  |
|---|---|
| Bruno Bajrami | Daniel Austin |
| *Bruno Bajrami* | *Daniel Austin* |